IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL ACTION FILE |
| ) | |
| BORIS TOUMASIAN, ) | NUMBER 1:10-cr-291-TCB-3 |
| ) | |
| Defendant. ) | |

**O R D E R**

This matter is before the Court on Defendant Boris Toumasian's objections [54] to Magistrate Judge King's Report and Recommendation (the "R&R") [46], which recommends that Toumasian's motion to suppress statements [35] and motion to suppress evidence [36] be denied.

After conducting a careful and complete review of a magistrate judge's findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1)(C); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982), *cert. denied*, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). Those portions of a report and recommendation to which an objection is not asserted are reviewed for plain error. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Court has conducted a careful review of the magistrate judge's factual and legal conclusions and Toumasian's objections thereto. Having done so, the Court finds that Judge King's factual and legal conclusions were correct and that his objections have no merit. The Court addresses each objection in turn.

Toumasian objects to two factual findings: (1) that he was identified by officers as one of the men on videotape using skimmed credit card numbers (R&R, at 4), and (2) that upon entering the apartment agents "asked" Toumasian to go to the ground (R&R, at 5). Toumasian contends that unlike his two co-defendants, agents never obtained a surveillance photo showing the face of the man they believed to be him and that he was not asked to go to the ground. After reviewing the record, the Court finds

the magistrate judge's findings of fact substantiated by the record. The Court further notes that even if the R&R had adopted the findings of fact Toumasian argues to be controlling, such findings would not affect this Court's rulings on the legal issues.

Toumasian also objects to the R&R's conclusion that the affidavit offered in support of the search warrant for the apartments established probable cause, i.e., that it contained a sufficient nexus between the residence and the criminal activity in addition to establishing a link between the defendant and the residence. He contends that without evidence that agents had observed him or his co-defendants take bags or other items in or out of the apartment, or an assertion by the affiant that the agent's experience led him to believe that Defendants would keep evidence in their apartments, there was not a sufficient nexus between the crime committed and the place to be searched.

With respect to Toumasian's arguments, the R&R determined that the affidavit supplied the authorizing magistrate with a reasonable basis for concluding that Toumasian likely kept evidence of his crimes at his home. Specifically, the R&R found that in cases of unlawful financial and fraudulent activity, issuing magistrates may draw reasonable inferences

that a participant in a crime would probably maintain evidence in a secure and readily accessible location, e.g., his or her residence.  The Court finds that neither the affiant's failure to state that his experience led him to conclude that contraband would likely be kept at the apartment based on the type of crime, nor the lack of any statements that contraband or bags capable of secreting skimming equipment or contraband had been observed being moved in or out of the apartments, changes these conclusions.

Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  Where an agent seeks to search a residence, "the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" *Karpordelis*, 569 F.3d at 1310 (quoting *United States v. Feliz*, 182 F.3d 82, 87–88 (1st Cir. 1999)).  In *Kapordelis*, the Eleventh Circuit explained that the search of the residence of a person suspected of criminal activity is justified based on the

4

"common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained." *Id.* (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. Unit B 1981)).

The fact that police have probable cause to believe that a defendant has committed a crime does not automatically give police probable cause to search his house for evidence of that crime. *U.S. v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982). However, an issuing judge may draw reasonable inferences in light of the proximity of the defendant's residence in relation to the timing of the criminal activity. *See United States v. Gonzalez*, No. 1:09–CR–00371–TWT/AJB, 2010 WL 2721882, at *16 (N.D. Ga. May 25, 2010); *see also United States v. Jenkins,* 901 F.2d 1075, 1080–81 (11th Cir. 1990) (evidence "that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence"). Thus, a warrant need not include a statement by an experienced law enforcement officer explicitly stating such inferences and need not rest on direct observations. *Id.* at n.20.

The Court finds that the affidavit contains sufficient evidence for the issuing magistrate to draw the reasonable inference that Toumasian and his

5

co-defendants kept evidence of their criminal activities at their residences. The apartment complex where Defendants resided is in the vicinity of the BP gas station where the debit cards were skimmed and the fraudulent transactions took place. Moreover, on December 4, 2010, agents observed Defendants Toumasian and Khalatyan leaving the apartment complex in a Honda Accord and travelling to the BP gas station. Upon reviewing a surveillance tape from the ATM where a victim had claimed that fraudulent withdrawals had been made that same day, the affiant concluded that Defendants had engaged in another fraudulent debit card transaction.

 Using common sense, the issuing magistrate could reasonably conclude that Defendants likely conducted their criminal activity in the Honda Accord, which agents observed parked at the apartment complex, and that based on the close proximity of their residences to the locations of the criminal activity, Defendants would likely keep evidence of those activities in their residences.

 Toumasian also objects to the R&R's conclusion that even if the search warrant failed to establish probable cause the good faith exception to the exclusionary rule would apply in this case. With the exception of cases "where the issuing magistrate wholly abandoned his judicial role[,]" or

6

where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]'" or where "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid[,]" the good faith exception applies.  *United States v. Accardo*, 749 F.2d 1477, 1480 & n.4 (11th Cir. 1985) (citations omitted).

   The good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  *Id.* at 1480 (quoting *United States v. Leon*, 486 U.S. 897, 925 (1984)).  Here, the warrant was supported by a sworn affidavit that particularly described the place to be searched and the items to be seized. And as outlined in the R&R, the affidavit contained ample information to support a reasonable belief by the officers that the warrant was valid. Toumasian does not argue, and there was no evidence that, the officers were dishonest or reckless or could not have harbored an objectively reasonable belief in the existence of probable cause.

Nevertheless, Toumasian contends that the magistrate judge erred regarding the good faith determination because it failed to consider the standard set forth in *Groh v. Ramirez*, 540 U.S. 551 (2004).  There, the Supreme Court refused to apply the good faith exception where officers had relied on a facially invalid warrant that failed to state with particularity the things to be seized.  The Court held that a warrant failing to particularly describe items to be seized explicitly violates the plain language of the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized*." U.S. CONST. amend. IV (emphasis added).  Toumasian attempts to draw a parallel between the particularity requirement and the nexus requirement, arguing that just as a warrant must state with particularity the location to be searched and the items to be seized, the warrant should state the nexus between the criminal activity and the location to be searched.  According to Toumasian, the affidavit's omission of a statement by an agent attesting that based on his training and experience contraband would be found in the residence should have alerted executing officers as to the warrant's invalidity.

The Court declines to extend *Groh* so far. Contrary to the particularity requirement, the nexus requirement is not explicitly stated in the Fourth Amendment. Thus, a failure to include a statement establishing a nexus between the place to be searched and the items to be found would not automatically put officers on notice of a warrant's deficiency in the same way that a failure to meet the particularity requirement would. Furthermore, as discussed *supra*, a statement establishing a nexus is not required where the affidavit contains sufficient information to support an inference of a connection between the criminal activity and the place to be searched. Therefore, the good faith exception would apply.

Finally, Toumasian challenges the R&R's determination that he was not subjected to a custodial interrogation when Detective Bochniak inquired as to who lived in the apartment. Toumasian contends that this question violated his *Miranda* rights and that his statement that he lived in the back room of the apartment should be suppressed.

A person is in "custody" for *Miranda* purposes only when there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). "[U]nder the objective standard, the reasonable person from whose

perspective 'custody' is defined is a reasonable innocent person." *Id.* In applying this test there are several factors to consider, including whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." *United States v. Long,* 866 F.2d 402, 405 (11th Cir. 1989). It is a totality-of-the-circumstances determination. *Brown,* 441 F.3d at 1349.

The fact that Toumasian was physically detained and handcuffed during the search warrant's execution does not necessarily constitute custody for *Miranda* purposes. *See Street,* 472 F.3d 1298 at 1309 (a "seizure," which occurs when a reasonable person would not feel free to terminate an encounter with police, does not necessarily constitute custody). The Court must consider all of the *Long* factors. The fact that five or six officers entered the apartment, placed Defendants on the floor and handcuffed them would seem to weigh in favor of custody. However, Toumasian did not ask to leave the apartment; the detective used a conversational tone; and the officers never drew their guns during the questioning. These facts weigh against a finding of custody. The Court finds that considering the totality of the circumstances, Judge King

correctly concluded that Toumasian was not in custody during his brief detention before being asked general questions about his residency.

Furthermore, Toumasian was not subjected to an interrogation. Under the routine booking question exception, questions that are necessary to secure biographical data necessary to complete pretrial or booking services are exempt from *Miranda*. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). In *Muniz*, the Supreme Court reasoned that because questions related to biographical information were reasonably related to a law enforcement agency's administrative concerns, such questions fall outside *Miranda*'s protection. *See also United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991) ("An officer's request for 'routine information for booking purposes is not an interrogation under *Miranda*, even though that information turns out to be incriminating.'").

Other circuits have extended *Muniz*'s reasoning to find that officers may also ask occupants routine questions to discern who lives in a residence when executing a search warrant so as to satisfy administrative concerns. *See United States v. Gaston*, 357 F.3d 77 (D.C. Cir. 2004) (asking an occupant who was secured in handcuffs for his name, address, date of birth, social security number and whether he owned the residence was not

an interrogation); *United States v. Glover*, 211 F. App'x 811, 814 (10th Cir. 2007) (officer asking three suspects who lived in the house during execution of a search warrant was not an interrogation under *Muniz*).

The detective's question to Toumasian as to whether he lived in the apartment was part of the routine procedure employed in executing search warrants.  The officers were required to leave a copy of the warrant with the person from whom any items were seized or from whose residence any property was taken, *see* FED. R. CRIM. P. 41, and therefore it was necessary for the officers to determine who lived at the residence.  The Court likewise applies *Muniz* to the facts at issue and holds that because the detective's question was related to the officers' administrative concerns of properly executing the search warrant, the detective's question to Toumasian did not constitute an interrogation.

Accordingly, the Court ADOPTS AS ITS ORDER the R&R [46] and DENIES Toumasian's motion to suppress statements [35] and motion to suppress evidence [36].

IT IS SO ORDERED this 22nd day of August, 2011.

_____
Timothy C. Batten, Sr.
United States District Judge